Dickman, J.
The plaintiff below, John C. Allen, was the owner and occupier of a tract of pasture land adjoining the field of one John Lucas, and separated by it from the railroad of the Pittsburg, Cincinnati & St. Louis Railway Company, upon which the Lucas field' abutted prior to the sale of a portion of said company’s right of way on the south of its track, as hereinafter mentioned. On the evening of November 5th, 1877, a large number o'f horses and other stock, belonging to Allen, escaped from said pasture, crossed the Little Miami river, and recrossing the same entered the Lucas field, whence, by reason of the fence along the line of the railroad being broken down and nut of repair, they strayed upon the railway track where one of them was killed, and others were more or less injured, by the railway company’s locomotive and cars. Allen filed his petition in the Court of Common Pleas of Greene county, against the railway company, claiming damages because of the defendant’s failure to construct and keep up a sufficient fence as required by statute, and because the defendant through its agents carelessly and negligently operated the train to the injury of the stock. The plaintiff recovered judgment in the common pleas, which was affirmed by the district court, and to reverse the judgment of the district court, the case comes into this court on the petition in error of the railway company.
*208 A fence sufficient to turn stock, had been erected and maintained between the P. C. & St. L. Railway and the adjoining field of Lucas, until the construction of the Dayton & South-eastern Railroad, which runs parallel with and south of the former road — the boundary line between the two railroads being at a point eight feet south of the center of the P. C. & St. L. Railway. The Dayton & South-eastern Railroad Company', for the purposes of its proposed road, purchased a portion of the right of way of the P. C. & St. L. Railway, along the south side thereof; and before such purchase, also bought, for the same purposes, additional right of way from the adjoining land owners, lying south of the right of way of the P. C. & St. L. Railway.
By virtue of a contract between the two companies, the Dayton & South-eastern Railroad Company agreed to “ keep up and maintain lawful fences, crossings and cattle-guards, on the south side of the said dividing line ” between the two railroads; and the Dayton & South-eastern Railroad Company entered into a contract with Lucas, by which he bound himself to erect and maintain a fence between the railroad and his said field. In the construction of the Dayton & South-eastern Railroad, the fence erected by the P. C. & St. L. Railway Company along the south side of its track, was taken down from its original place, and located on the south side of the Dayton & South-eastern Railroad, but was only partly finished on the 5th of November, 1877. It was conceded by the parties, on the trial in the court below, that at the point where the stock of the plaintiff entered upon the railroad grounds, there was no good and sufficient fence, to turn stock, between the railroad and the adjoining field of Lucas.
In our view of this case, it becomes unnecessary to consider the question of negligence in the management of the defendant’s train, as we are of the opinion, that by reason of the insufficiency of the fence between said adjoining field and the railroad, the Pittsburgh, Cincinnati and St. Louis Railway Company became liable for the injury to the plaintiff’s stock.
*209 It is not claimed that the plaintiff’s animals were at large with his knowledge or through his fault. The record does not disclose any contributory negligence on his part, in that respect, which would prevent his recovery from the railway company. It is contended however by the plaintiff in error, that the obligation to maintain fences imposed upon railroad companies by the act of April 18, 1874 (71 Ohio L., 85), is limited to the protection and benefit of the owners and occupiers of abutting lands, and does not extend to the public general]}'. It is said, that as the field of Lucas intervened, the plaintiff in error was not required to fence against Allen’s horses or other stock that might escape— though without his fault — from his pasture, into the intervening field, and thence upon its road. The design of the act of April 18, 1874, requiring railroad companies to fence their roads, was not only to protect the property of adjoining land-owners, and prevent cattle or other domestic animals from endangering themselves, but also to guard the lives of passengers that would be put in peril by animals getting upon the track. The safety of the public at large requires, that good and sufficient fences should be kept up along the whole line of the lands of railroads on both sides, and not merely that safe and sufficient crossings should be maintained, with the necessary cattle-guards. The idea, that the liability of railroad companies for failure to comply with the statutory requirement to fence, is limited to owners and occupiers of abutting lands, is negatived by the comprehensive provision of the statute, that “every such-railroad. company or party shall be liable for all damages sustained in person or property, in any manner, by reason of the want or insufficiency of any such fence, crossing or cattle-guard, or any carelessness or neglect of said company, their agent or agents, in constructing or keeping the same in repair.” -
It was held in Marietta & Cincinnati Railroad Co. v. Stephenson et al., 24 Ohio St., 48, that the obligation to construct and maintain fences upon both sides of railroads imposed by the act of March 25, 1859 (S. & C., 331), was *210 not limited to owners and occupiers of adjoining lands, but extended to the public generally. Such obligation has not been changed by the act of April 18, 1874, nor do we, in comparing the provisions of the two statutes, discover any thing in the last statute which restricts such obligation to those who own lands that abut on railroads.
The railway company, among other things, set up ás a defense against the plaintiff’s claim, the contract it had entered into with the Dayton & South-eastern Railroad Company in reference to fencing on the south side of the dividing line between the two roads. Our attention has been called to the 4th section of the act of March 25, 1859, which provides, that “nothing contained in this act shall be held to affect in any manner any contract or agreement between any railroad company or other party having the control and management of a railroad, and the proprietors or occupiers of lands adjoining for the construction and maintenance of fences, cattle-guards and railroad crossings.” If under this section, the owner of adjoining lands elects, by contract, to assume an obligation to fence of which the law relieves him, he has not, in the absence of gross carelessness on the part of the railroad compan}1-, any ground of complaint if his cattle or oilier animals are killed upon thrailroad through his own breach of his contract. The C. H. & D. Railroad Company v. Waterson et al., 4 Ohio St., 424. But his neighbors, who are strangers to his contract with the railroad company, and whose stock without their knowledge or fault' stray upon his grounds and thence upon the track, are certainly not to be prejudiced in their legal rights by his laches or neglect in performing his agreement.
The competency of the railway company to enter into said contract with the Dayton & South-eastern Railroad Company will not be called in question, but, as its statutory duty was to keep its road properly fenced, it 'did not discharge that duty b}" contracting with another to perform it, if the performance itself was insufficient. Gill v. A. G. W. Railway Company, 27 Ohio St., 240. By selling a portion of its right of way for the purposes of a parallel *211 road, the railway company rendered necessary a removal of the fence which it had previously built, and it became its duty 'to see that the Dayton & South-eastern Railroad Company, which it had made an agent in that behalf, kept up the “lawful fences” according to agreement. If the railway company failed to do so, it cannot be said to have discharged its plain statutory duty to fence its road, by procuring others to agree to keep up the proper fences.
We need not here inquire, how far or in what manner, its contract with the Dayton & South-eastern Railroad Company, or the contract between the last named company and Lucas, affected the liability of the railway company to either of said contracting parties. The plaintiff in error can claim no benefit from said contracts, as against Allen, the plaintiff below. Not being an assignee of Lucas, not being a party or privy to said contracts, or connected with them in fact or law in any manner, the rights of Allen are not to be prejudiced by their provisions. In view of the aforegoing considerations, and upon a careful examination of the record in this case, we discover no error assigned for which the judgment of the district court should be reversed.
The judgment of the district court must therefore be affirmed.

Judgment accordingly.